Martha DERDA, Plaintiff–Appellee,

v.

BRIGHTON, COLORADO,
CITY OF, Defendant,

and

Ted Anderson, Defendant–Appellant.

No. 94–1298.

United States Court of Appeals,
Tenth Circuit.

April 28, 1995.

Christina M. Habas, Denver, CO, for defendant-appellant.

R.C. Stephenson, Denver, CO (S. Morris Lubow, with him on the brief), for plaintiff-appellee.

Before SEYMOUR, Chief Circuit Judge, ANDERSON, Circuit Judge, and SHADUR,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Defendant-appellant Ted Anderson, the city manager for the City of Brighton, Colorado, appeals from the denial of his motion for summary judgment. The district court concluded that Anderson lacked qualified immunity for his decision to terminate the employment of the plaintiff-appellee, Martha Derda. We reverse and remand.

## BACKGROUND

Ms. Derda was employed by the City of Brighton as a recreation coordinator from October 9, 1989, through March 29, 1993. On March 30, 1993, she was appointed facility manager for the Brighton recreation center. At all times relevant to this case, Mr. Anderson was the Brighton City Manager. Mr. Anderson apparently told Ms. Derda that she was on probation for six months in her new position as facility manager, in accordance with Brighton's personnel policies

* Honorable Milton I. Shadur, Senior Judge, United States District Court for the Northern District of Illinois, sitting by designation.

and procedures, as set forth in its employee handbook.

The City received complaints about Ms. Derda's performance of her duties as facility manager. As a result, Mr. Anderson met with the Brighton City Attorney, Margaret Brubaker, on July 20, 1993, to discuss Ms. Derda's employment situation. Ms. Brubaker informed Mr. Anderson of the procedures to be followed in terminating a probationary employee, and Mr. Anderson subsequently terminated Ms. Derda's employment with the City. Mr. Anderson has stated that he terminated Ms. Derda because she failed to properly train the recreation staff, sufficiently schedule recreation programs, or solve problems which arose.

Ms. Derda brought this action initially in state court, claiming that she did not receive prior notice of the charges against her, that she was never told the reasons for her discharge, that she was never given an opportunity to respond to the charges or to consult with counsel prior to her discharge, and that she received no pretermination hearing. She claimed violations of her Fourteenth Amendment right to due process, Article II of the Colorado Constitution, Section 31–4–211 of the Colorado Revised Statutes, and various policies and procedures contained in Brighton's employee handbook. She named as defendants Mr. Anderson and the City of Brighton. Defendants removed the matter to federal district court. Ms. Derda then filed a motion seeking to remand the case back to the state court and Mr. Anderson filed a motion for summary judgment on the ground that he was entitled to qualified immunity.

The district court denied both motions. This appeal involves only the propriety of the denial of Mr. Anderson's motion for summary judgment on qualified immunity grounds.

## DISCUSSION

Under the doctrine of qualified immunity, "government officials performing discre-

tionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ We review the denial of summary judgment de novo, applying the same legal standard as the district court. *Romero v. Fay,* 45 F.3d 1472, 1475 (10th Cir.1995). "Special rules apply when a defendant raises the defense of qualified immunity in a summary judgment motion." *Cummins v. Campbell,* 44 F.3d 847, 850 (10th Cir.1994); *see also Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991); *Hinton v. City of Elwood,* 997 F.2d 774, 779 (10th Cir.1993). When a defendant raises qualified immunity in a motion for summary judgment, the plaintiff "must initially make a twofold showing." *Cummins,* 44 F.3d at 850. She must first show that the defendant's "alleged conduct violated the law." *Id.* Second, she must show " 'that the law was clearly established when the alleged violation occurred.' " *Id.* (quoting *Hinton,* 997 F.2d at 779). In meeting that burden, the plaintiff "must articulate the clearly established constitutional right ... with specificity." *Romero,* 45 F.3d at 1475. It is insufficient simply to "identify in the abstract a clearly established right and allege that the defendant has violated it." *Id.* While *Siegert* normally demands this two-part inquiry, we have recognized that in certain cases, the *Siegert* framework has proven difficult to apply because the threshold "constitutional violation" analysis may run together with the "clearly established" analysis. *Martinez v. Mafchir,* 35 F.3d 1486, 1490 (10th Cir.1994). This is such a case.

■ If the plaintiff fails to make the twofold showing, the defendant prevails. *Hannula v. City of Lakewood,* 907 F.2d 129, 131 (10th Cir.1990); *Pueblo Neighborhood Health Ctrs. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988). If the plaintiff succeeds, the burden shifts to the defendant to make the usual summary judgment showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Cummins,* 44 F.3d at 850. " 'Whether an asserted federal right was clearly established at a particular time ... presents a question of law ... [that] must be resolved de novo on appeal.' " *Romero,* 45 F.3d at 14 (quoting *Elder v. Holloway,* —— U.S. ——, ——, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994)) (alteration in original). However, as in all summary judgment contexts, "we review the evidence in the light most favorable to the nonmoving party." *Bisbee v. Bey,* 39 F.3d 1096, 1100 (10th Cir. 1994).

In arguing that she had a clearly established property right in her job, which could not be taken from her without due process, Ms. Derda relies primarily on Colo.Rev.Stat. § 31–4–211(2), which provides:

**City manager—powers and responsibility.**

> .    .    .    .    .
>
> (2) Officers and employees appointed by the city manager may be removed by him at any time for cause. The decision of the city manager in any such case shall be final.

Identical language also appears in section 1.01 of the Brighton employee handbook. Ms. Derda asserts that this language, which makes no distinction between probationary and nonprobationary employees, confers upon her a protected interest in her job.

■ In so arguing, she relies upon *Cleveland Board of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Ewers v. Board of County Comm'rs,* 874 F.2d 736 (10th Cir.1989); *Bailey v. Kirk,* 777 F.2d 567 (10th Cir.1985); *Clouser v. City of Thornton,* 676 F.Supp. 228 (D.Colo.1987); and *DeBono v. Vizas,* 427 F.Supp. 905 (D.Colo.1977). In *Loudermill,* the Supreme Court emphasized the "straightforward" point that "the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1493. Property interests themselves, however, are not created by the Constitution; rather, " 'they are created and their dimensions are defined by existing

rules or understandings that stem from an independent source such as state law....'" *Id.* at 538, 105 S.Ct. at 1491 (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)); *see also Bailey,* 777 F.2d at 573 ("[p]laintiff's property interest in his employment is created, defined and governed by state law").

In *Loudermill,* the Supreme Court applied these general principles, holding that an Ohio statute which permitted classified civil servants to retain their employment " 'during good behavior and efficient service' " and which prohibited dismissal " 'except ... for ... misfeasance, malfeasance, or nonfeasance in office,' " conferred upon such employees a protected property interest. *Loudermill,* 470 U.S. at 538–39, 105 S.Ct. at 1491–92 (quoting Ohio Rev.Code Ann. § 124.34). Furthermore, the Court held that the property interest so conferred was unaffected by the fact that the statute itself provided termination procedures; rather, the property interest created by the statute was protected by constitutional due process safeguards. *Id.* at 541, 105 S.Ct. at 1492–93.

Following *Loudermill,* we held in *Bailey,* a case involving Oklahoma law, "that a public employee, who could not be suspended except for cause, had a property interest in continued employment, even though the city's suspension provisions may not provide for a right of appeal." *Bailey,* 777 F.2d at 574. We similarly held in *Ewers v. Board of County Comm'rs,* 874 F.2d 736 (10th Cir. 1989), a case involving New Mexico law, that "[b]y its explicit terms, that an employee cannot be discharged except for cause, the [county personnel] manual has used the language as in *Loudermill* which, without dispute, meant that the discharged employee 'possessed property rights in continued employment.' " *Id.* at 739 (quoting *Loudermill,* 470 U.S. at 538–39, 105 S.Ct. at 1491–92).

■ Only two cases, *DeBono* and *Clouser,* have specifically addressed section 31–4–211(2). In *DeBono,* a pre-*Loudermill* decision, the plaintiff, a suspended policeman, argued "that the words, 'for cause,' [in section 31–4–211(2) ] create a constitutionally protected property right to continued employment." *DeBono,* 427 F.Supp. at 907.

The district court rejected that argument, holding that "the second sentence [of section 31–4–211(2) ] makes both the nature of Plaintiff's interest in his employment and the legislative intent regarding the city manager's power to remove an employee of a non-home rule city very clear." *Id.* at 908. Finding that the statute gave to the city manager complete and final authority to terminate employees, the district court held that section 31–4–211(2) did not create a property interest in continued employment.

In *Clouser,* decided after *Loudermill,* a discharged city employee again invoked section 31–4–211(2) to establish a property interest in his employment. The defendants moved for summary judgment, relying on *DeBono.* The court, however, concluded that *Loudermill* had undermined *Debono* 's holding that the statute's second sentence—providing that the city manager's decision was final—indicated that no property right was conferred:

> [U]nder *Loudermill,* a property right in continued employment may exist regardless of whether the procedure for deprivation of that right is described as 'final.' I am therefore unable to conclude at this stage of the proceedings that § 31–4–211 fails to provide the plaintiff with a property interest in continued employment with the defendant city.

*Clouser,* 676 F.Supp. at 231.

Thus, *DeBono* held in 1977 that the second sentence of section 31–4–211(2) defeated a claim of a property interest in continued employment, and *Clouser* held in 1987 that *Debono* 's reasoning on that point had been undermined by *Loudermill.* Neither case, however, clearly held that the statute conferred a property interest in a city employee's continued employment.

Ms. Derda invokes the trilogy of *Loudermill, Bailey,* and *Ewers,* and argues that *Clouser* clearly overruled *DeBono,* to support her argument that she had a protected property interest in her job by virtue of section 31–4–211(2) which, she claims, only permits dismissals for cause. She further argues that her probationary status in the facility manager position is irrelevant to the exis-

tence of that property interest, because in *Patrick v. Miller*, 953 F.2d 1240, 1245 (10th Cir.1992), we held that a statute's failure to distinguish between probationary and permanent employees permitted an arguably probationary employee to claim a protected property interest under the statute. We disagree.

We reject Ms. Derda's argument because we reject the premise from which it proceeds. Ms. Derda assumes that section 31–4–211(2) is the same kind of statute which was involved in *Loudermill*, *Bailey* and *Ewers*. Arguably, it is not. The state statute held to confer a property right in *Loudermill* was an Ohio statute explicitly directed to the rights and duties of civil servants. *Loudermill*, 470 U.S. at 538–39, 105 S.Ct. at 1491–92 (citing Ohio Rev.Code Ann. § 124.11 (1984)). Similarly, the county personnel policy manual in *Ewers* clearly involved termination procedures for county employees, providing, "[e]mployees can not be discharged without cause." *Ewers*, 874 F.2d at 739. *Bailey* likewise involved sections of the relevant city personnel policies and procedures manual. None of these cases considered whether a statute or manual provision which addressed the powers and responsibilities of the city manager could nonetheless confer on employees a protected property interest in employment. "[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text." *INS v. National Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189, 112 S.Ct. 551, 556, 116 L.Ed.2d 546 (1991); *see also Mead Corp. v. Tilley*, 490 U.S. 714, 723, 109 S.Ct. 2156, 2162, 104 L.Ed.2d 796 (1989). The statute's title—"City manager—powers and responsibility"—as well as its language—"[o]fficers and employees appointed by the city manager may be removed by him at any time for cause"—suggest that the Colorado legislature did not intend this particular statute to confer upon city employees any interest in their jobs. Rather, the legislature may have intended to clarify the powers of the city manager. The second sentence of the statute arguably reflects this intent, inasmuch as it directly addresses the city manager's authority: "The decision of the city manager ... shall be final."

Further, as we have indicated, the only two cases to explicitly address section 31–4–211(2) discuss the significance, if any, of the last sentence of the section, and suggest that *Loudermill* undermines the argument that the last sentence dilutes any property interest conferred by the first sentence. They do not clearly state that the statute in question confers a property right in employment. *Cf. Coffman v. Trickey*, 884 F.2d 1057, 1063 (8th Cir.) (finding qualified immunity where no prior cases interpreted particular application of state statute), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1989); *Johnson v. Brelje*, 701 F.2d 1201, 1210 (7th Cir.1983) (finding qualified immunity where no prior cases addressed the significance of particular statute involved).

It is at least unclear whether section 31–4–211(2) is intended to confer on employees an interest in continued employment. As indicated, to defeat Mr. Anderson's motion for summary judgment, Ms. Derda must establish with specificity both that her termination violated a constitutional right and that the right violated was clearly established at the time of the violation. Given the uncertainty concerning the appropriate interpretation of section 31–4–211(2), we conclude that Ms. Derda has, at a minimum, failed to establish the second part of the required twofold showing: she has failed to demonstrate that any right violated was clearly established at the time she was terminated.

For the foregoing reasons, the denial of Mr. Anderson's motion for summary judgment on qualified immunity grounds is REVERSED and the case is REMANDED for proceedings consistent herewith.