Mark ROBINSON, Plaintiff,

v.

The CITY AND COUNTY OF DENVER, David Michaud, in his individual capacity and in his official capacity as Chief of the Denver Police Department, Lieutenant Jerry Frazzini of the Denver Police Department, in his individual and official capacity, Unknown Officers of the Denver Police Department, in their individual and official capacities, Board of County Commissioners of Jefferson County, Ronald Beckham, in his individual and official capacity as Sheriff of the Jefferson County Sheriff Department, Unknown Deputies of the Jefferson County Sheriff Department, in their individual and official capacities, KWGN—Channel 2, Unknown Members of the KWGN—Channel 2 News Team, KCNC—Channel 4, Unknown Members of the KCNC—Channel 4 News Team, KMGH—Channel 7, Unknown Members of the KMGH—Channel 7 News Team, KUSA—Channel 9, Unknown Members of the KUSA—Channel 9 News Team, The Rocky Mountain News, Tustin Amole, Thomas Kelsey, The Denver Post, Jim Kirksey, and Unknown Members of the Denver Post News Team, Defendants.

No. Civ.A. 94 N 0771.

United States District Court,
D. Colorado.

Feb. 26, 1999.

David Arthur Lane, Paula Dee Greisen, Miller, Lane, Killmer & Greisen, LLP, Denver, CO, for Plaintiff.

Theodore Samuel Halaby, Halaby, Cross & Schluter, Denver, CO, for Defendants City and County of Denver, David Michaud.

Louis Byron Bruno, Bruno, Bruno & Colin, P.C., Denver, CO, for Defendant Jerry Frazzini.

William A. Tuthill, III, County Attorney's Office, Golden, CO, for Defendant Board of Com'rs of Jefferson County.

Thomas B. Kelley, Faegre & Benson, Denver, CO, Daniel F. Warden, Bond & Morris, P.C., Denver, CO, Charles J. Sennet, Chicago, IL, for Defendant KWGN-Channel 2.

Marc D. Flink, Todd L. Lundy, Peter John Korneffel, Jr., Baker & Hostetler, Denver, CO, Anne H. Egerton, Burbank, CA, Kathryn A. Elzi, Elzi & Gurr, Denver, CO , for Defendant KCNC-Channel 4.

Gordon G. Greiner, A. Bruce Jones, Alan Neal Stern, Holland & Hart, LLP, Denver, CO, for KMGH-Chaneel 7.

Andrew M. Low, Davis, Graham & Stubbs, Denver, CO, for KUSA-Channel 9.

James A. Clark, Marc D. Flink, Todd L. Lundy, Peter John Korneffel, Jr., Baker & Hostetler, Denver, CO, for Defendants Rocky Mountain News, Tustin Amole, Thomas Kesley.

## MEMORANDUM OPINION AND ORDER

NOTTINGHAM, District Judge.

This is a civil-rights action. Plaintiff Mark Robinson alleges that the City and County of Denver ("Denver") and a number of Denver police officers (hereinafter, collectively, "Denver defendants"), together with the Board of County Commissioners of Jefferson County ("Board"), the Jefferson County Sheriff, and unknown Jefferson County deputy sheriffs (hereinafter, collectively, "Jefferson County defendants"), violated his constitutional rights by conspiring with certain Defendant Denver media organizations to videotape and audiotape his arrest in his home. Plaintiff seeks relief under 42 U.S.C.A. §§ 1983, 1988 (West 1994), and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. He also asserts state-law tort claims against defendants for trespass, invasion of privacy, negligent supervision, and outrageous conduct. Jurisdiction is based on 28 U.S.C.A. §§ 1331, 1343, 1367 (West 1993).

The matter is before the court on "Jefferson County Defendants' Motion to Dismiss" and "City [and County of Denver] Defendants' Motion for Summary Judgment and for Stay of Discovery." Both groups of defendants maintain that: (1) plaintiff's claim concerning violation of his constitutional rights is properly brought under the Fourth Amendment rather than the Fifth and Fourteenth Amendments; (2) plaintiff's fourth amendment claim against the law enforcement defendants is barred by the doctrine of qualified immunity; (3) plaintiff's state-law tort claims against the law enforcement defendants are barred by the Colorado Governmental Immunity Act, Colo.Rev.Stat. §§ 24–10–101 to 120 (1998) ("G.I.A."); (4) plaintiff's fourth amendment claims against the Board and Denver fail because plaintiff has not shown that their policies or customs caused his rights to be violated; and (5) plaintiff's state-law claims against the Board and Denver are barred by the Colorado G.I.A. Jefferson County defendants additionally argue that the existence of an arrest warrant bars plaintiff's trespass claim against them.

### FACTS

On March 30, 1993, Detective Richard Schneider of the Denver Police Depart-

ment obtained a warrant for plaintiff's arrest. (City Defs.' Br. in Supp. of Mot. for Summ.J. and for Stay of Disc., Ex. A. [arrest warrant and supporting affidavit] [filed Sept. 21, 1994] [hereinafter "Denver Defs.' Br."].) Police sought to arrest plaintiff for sexual exploitation and sexual assault of children. (*Id.*) The warrant made no mention of media participation in the arrest. (*See id.*)

That evening, Denver police officers and Jefferson County deputy sheriffs went to plaintiff's home, located in Jefferson County, and executed the arrest warrant. (*See id.*, Ex. B [Frazzini's Aff. ¶¶ 2–3].) They were accompanied by employees of Denver-area television stations and newspaper organizations. (*Id.*) Denver defendants maintain that they invited the media to film and record the arrest in the hope that unidentified victims would come forward upon seeing plaintiff's picture on television and in newspapers. (*See id.*) The members of the media entered plaintiff's home with the law enforcement officials, videotaped plaintiff's arrest, and asked plaintiff questions while filming him. (*Id.* at 3.) According to plaintiff, he did not consent to the media's entry into his home. When he realized that members of the press were in his house, he demanded that they leave. (Pl.'s Resp. in Opp'n to City Defs.' Mot. for Summ.J. and for Stay of Disc., Attach. [Pl.'s Aff. ¶¶ 6–7] [filed Nov. 8, 1994] [hereinafter "Pl.'s Resp."].)

On April 4, 1994, plaintiff filed a complaint in this court, in which he asserted claims against law enforcement defendants for: (1) violation of his fourth amendment right to be free from unreasonable search and seizure; (2) violation of his fifth and fourteenth amendment rights to due process; (3) trespass; (4) invasion of privacy; and (5) outrageous conduct. (Compl. [filed Apr. 4, 1994].) Plaintiff also asserts claims against the media defendants for: (1) trespass; (2) invasion of privacy; (3) negligent supervision; and (4) outrageous conduct. (*Id.*) This Memorandum Opinion and Order concerns only plaintiff's claims against the law enforcement defendants and has no effect on his claims against the media defendants.

## ANALYSIS

### 1. Jefferson County Defendants' Motion to Dismiss

Jefferson County defendants move, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiffs' claims against them on the grounds that: (1) plaintiff's state-law tort claims of trespass, invasion of privacy, and outrageous conduct are barred by the G.I.A.; (2) plaintiff's trespass claim fails due to the existence of the arrest warrant; (3) plaintiff alleges no life, liberty, or property interest protected by the due process clause; (4) plaintiff's fourth amendment claim fails because there is no recognized right to be free from media presence during an arrest; (5) Jefferson County defendants sued in their individual capacities are entitled to qualified immunity from plaintiff's claims under 42 U.S.C.A. § 1983; and (6) plaintiff alleges no facts in support of his claim that the Board had a policy or custom which led to the alleged constitutional violations. (Jefferson County Defs.' Mot. to Dismiss at 2–3 [filed July 11, 1994] [hereinafter "Jefferson County Defs.' Br."].)

For the purpose of ruling on a motion to dismiss pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint is construed in the light most favorable to plaintiff, and its allegations are taken as true. *See, e.g., Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1533 (10th Cir.1992). The court's inquiry is directed to whether the allegations set forth in the complaint, if true, are sufficient to state a claim within the meaning of rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a) provides that the complaint need only set out a generalized statement of facts from which defendants will be able to frame a responsive pleading. In appraising the sufficiency of plaintiff's allegations, "the

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Daigle*, 972 F.2d at 1533.

### a. State–Law Immunity

### i. Public–Entity Immunity

The G.I.A. provides:

> A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as otherwise provided in this section.

Colo.Rev.Stat. § 24–10–106(1). None of the exceptions enumerated in section 24–10–106(1) apply here. *See id.* Plaintiff concedes that the Board, as a governmental entity, cannot be held liable for his state-law tort claims. (Pl.'s Resp. in Opp'n to Jefferson County Defs.' Mot. to Dismiss at 3 [filed Aug 23, 1994] [hereinafter "Pl.'s Jefferson County Resp."].) Indeed, he appears to allege claims for trespass and invasion of privacy only against the individual deputy sheriffs, not against the Board.

■ Plaintiff does allege an outrageous-conduct claim against the Board. (Compl.¶¶ 80–83.) This claim is specifically barred by another section of the G.I.A., which states:

> A public entity shall not be liable either directly or by indemnification for punitive or exemplary damages or *for damages for outrageous conduct*, except as otherwise determined by a public entity pursuant to section 24–10–118(5).

Colo.Rev.Stat. § 24–10–114(4) (emphasis supplied). The referenced exception, section 24–10–118(5), concerns the ability of public entities to voluntarily defend public employees against *punitive damages claims* or to pay or settle such claims. It provides no exception to the rule prohibiting damage claims for outrageous conduct. Thus, section 24–10–118(5) is inapplicable here, and the G.I.A. bars plaintiff's claim of outrageous conduct against the Board. *See id.* Accordingly, Jefferson County defendants' motion to dismiss must be granted with respect to plaintiff's outrageous-conduct claim against the Board.

### ii. Public Employee Immunity

Pursuant to the G.I.A.:

> A public employee shall be immune from liability in any claim for injury, whether brought pursuant to this article, section 29–5–111, C.R.S., the common law, or otherwise, which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment *unless the act or omission causing such injury was willful and wanton.*

Colo.Rev.Stat. § 24–10–118(2)(a) (emphasis supplied). Thus, unless plaintiff shows that Jefferson County defendants acted willfully and wantonly by bringing members of the press into his home to record his arrest, they are entitled to immunity with respect to plaintiff's claims of trespass, invasion of privacy, and outrageous conduct. *Id.*

The G.I.A. does not define "willful and wanton." The Colorado Supreme Court, however, has interpreted the phrase's meaning in *Moody v. Ungerer*, 885 P.2d 200 (Colo.1994). For guidance, the court looked to the definition of "willful and wanton" contained in Colo.Rev.Stat. § 13–21–102(1)(b) (1987) (concerning exemplary damages):

> As used in this section, "willful and wanton conduct" means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the

safety of others, particularly the plaintiff.

*Moody,* 885 P.2d at 205. The court also considered the meaning of "willful and wanton" in interpreting Colorado's automobile guest statute in *Pettingell v. Moede,* 129 Colo. 484, 271 P.2d 1038 (1954). *Id.* In *Pettingell,* the court explained:

> Willful action means voluntary; by choice; intentional; purposeful. Wantonness signifies an even higher degree of culpability in that it is wholly disregardful of the rights, feelings and safety of others. It may, at times, even imply an element of evil. One may be said to be guilty of "wanton and willful disregard" when he is conscious of his misconduct, and although having no intent to injure any one, from his knowledge of surrounding circumstances and existing conditions is aware that his conduct in the natural sequence of events will probably result in injury to his guest, and is unconcerned over the possibility of such result.

*Id.* at 1042.

■ Section 24–10–110(5)(a) of the G.I.A. provides that "[i]n any action in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the complaint." Section 24–10–110(5)(b) provides that "[f]ailure to plead the factual basis of an allegation that an act or omission of a public employee was willful and wanton shall result in dismissal of the claim for failure to state a claim upon which relief can be granted." The G.I.A. does not define "specific factual basis," but the phrase's plain meaning is unambiguous. It requires that a plaintiff set forth in his complaint specific facts which support his claim that public employees acted willfully and wantonly. Conclusory allegations therefore do not satisfy section 24–10–110(5).

■ In this case, plaintiff's factual allegations are sufficiently specific to comply with Colo.Rev.Stat. § 24–10–110(5)(a). Plaintiff alleges that Jefferson County defendants "acted intentionally" by "invit[ing], permitt[ing], authoriz[ing], and caus[ing] Defendants news media to enter the residence of [plaintiff] during the execution of [the arrest] warrant." (Compl.¶¶ 33, 34.) By asserting that Jefferson County defendants intentionally brought the press into his home, plaintiff meets the "willful" component of the pleading standard. *See Pettingell,* 271 P.2d at 1042.

Plaintiff further alleges that Jefferson County defendants "knew or should have known that Mr. Robinson would not consent and did not consent to the entry of Defendants new [sic] media into his private residence," and that they "undertook their actions intentionally and knowing or having reason to know that such actions violated the constitutional rights of Mr. Robinson and constituted torts upon his person and invasion of his property and privacy." (Compl.¶¶ 33, 37.) Plaintiff's assertion—that, in bringing the press into his home, Jefferson County defendants acted outrageously and knowingly disregarded plaintiff's rights against trespass and invasion of privacy—falls within the Colorado Supreme Court's interpretation of "wantonness" as encompassing conduct "wholly disregardful" of others' rights. *See Pettingell,* 271 P.2d at 1042. Although *Pettingell* provides that an element of evil may be implied in wanton behavior, it does not hold that a showing of evil is necessary to state a claim of wanton behavior. *See id.* ("[wantonness] *may, at times,* even imply an element of evil") (emphasis supplied). Thus, I find that plaintiff's allegation of willful and wanton conduct by Jefferson County defendants is sufficient to satisfy section 24–10–110(5)(a). Jefferson County defendants sued in their individual capacities are not immune from plaintiff's state-law tort claims under the G.I.A.

### b. Warrant as Bar to Trespass Claim

■ Jefferson County defendants allege that, because they had an arrest war-

rant for plaintiff, their entry into his home cannot form the basis for a trespass claim. (Jefferson County Defs.' Mot. to Dismiss at 4.) As support for their contention, Jefferson County defendants cite *East Coast Novelty Co. v. City of New York*, which holds that "an officer who enters premises pursuant to a valid search warrant cannot be held liable for trespass." *East Coast Novelty Co. v. City of New York*, 809 F.Supp. 285, 302 (S.D.N.Y.1992). Under Colorado law, however, law enforcement officials who exceed the scope of their warrant are subject to civil liability as trespassers. *See Walker v. City of Denver*, 720 P.2d 619, 623 (Colo.App.1986). As discussed more fully in the qualified-immunity analysis below, plaintiff has stated a valid claim that Jefferson County defendants exceeded the scope of their arrest warrant by bringing the media into plaintiff's home. Accordingly, the arrest warrant cannot be regarded as an automatic bar to plaintiff's trespass claim in the current procedural posture of the case. *See id.*

#### c. Substantive Due Process Claims

Plaintiff initially claimed that the law enforcement defendants violated his fifth and *fourteenth* amendment rights to substantive due process by bringing the press into his home. (Compl.¶¶ 47–51.) In his response to Denver defendants' motion for summary judgment, however, he relinquished his fourteenth amendment substantive due process claim against those defendants in light of *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). (Pl.'s Resp. in Opp'n to City [and County of Denver] Defs.' Mot. for Summ.J. and for Stay of Discovery at 11 [filed Nov. 8, 1994] [hereinafter "Pl.'s Denver Resp."].) Plaintiff did not, however, clearly abandon his *fifth* amendment substantive due process claim against Denver defendants, nor did he clearly relinquish any aspect of his substantive due process claim against Jefferson County defendants.

In *Albright*, the Supreme Court held that the Fourth Amendment, rather than the more generalized notion of fifth and fourteenth amendment substantive due process, governs "deprivations of liberty that go hand in hand with criminal prosecutions." *Albright*, 510 U.S. at 274, 114 S.Ct. at 813. *Albright* thus bars plaintiff's fifth and fourteenth amendment substantive due process claims. *See id.* Accordingly, Jefferson County defendants' motion to dismiss is granted with respect to those claims.

#### d. Fourth Amendment Claim—Validity

Jefferson County defendants argue that plaintiff's fourth amendment claim should be dismissed because there is no recognized right to be free from media presence during an arrest. (Jefferson County Defs.' Br. at 7–9.) For the reasons explained in the qualified immunity analysis below, I find that plaintiff had a fourth amendment right to be free from Jefferson County defendants' facilitation of the media's entry into his home. Accordingly, I reject Jefferson County defendants' argument.

#### e. Fourth Amendment Claim—Qualified Immunity

Jefferson County defendants also assert that they are entitled to qualified immunity against plaintiff's claim that they violated his fourth amendment rights. (*Id.* at 7–9.) The doctrine of qualified immunity shields government officials performing discretionary functions from individual liability under section 1983 where their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Derda v. City of Brighton, Colo.*, 53 F.3d 1162, 1163–64 (10th Cir. 1995). Whether a defendant is entitled to qualified immunity is a question of law. *Derda*, 53 F.3d at 1164. Once a defendant

claims qualified immunity, the plaintiff bears the heavy burden of demonstrating that: (1) defendant's alleged actions violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established at the time of the alleged violation. *See Trigalet v. Young,* 54 F.3d 645, 647 (10th Cir.1995) (quoting *Albright v. Rodriguez,* 51 F.3d 1531, 1533 [10th Cir.1995]); *Derda,* 53 F.3d at 1164. The plaintiff must articulate "with specificity" the clearly established constitutional or statutory right at issue. *Romero v. Board of County Comm'rs,* 60 F.3d 702, 704 (10th Cir.1995) (quoting *Albright,* 51 F.3d at 1534). "It is insufficient simply to 'identify in the abstract a clearly established right and allege that the defendant has violated it.'" *Derda,* 53 F.3d at 1164 (quoting *Romero v. Fay,* 45 F.3d 1472, 1475 [10th Cir.1995]). For a right to have been clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v.. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *see also Beard v. City of Northglenn,* 24 F.3d 110, 114 (10th Cir.1994). This does not mean, however, "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Creighton,* 483 U.S. at 640, 107 S.Ct. 3034. Rather, "in light of pre-existing law the unlawfulness must be apparent." *Id.* The Tenth Circuit has held that "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992).

### i. Did the Deputy Sheriffs' Actions Violate a Constitutional Right?

 "The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Payton v. New York,* 445 U.S. 573, 589, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980). Consequently, "the sanctity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection." *United States v. Martinez–Fuerte,* 428 U.S. 543, 561, 96 S.Ct. 3074, 3084–85, 49 L.Ed.2d 1116 (1976). Indeed, protecting the home against highly intrusive "general searches" was the impetus behind the adoption of the Fourth Amendment. *Payton,* 445 U.S. at 583, 100 S.Ct. at 1378 (1980). Government entry into a private home is therefore permitted only under limited circumstances. *Id.* When it is allowed, the degree of intrusiveness must be minimized. *See Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (an objective of the Fourth Amendment is that "those searches [and seizures] deemed necessary should be as limited as possible"), *overruled on other grounds by Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (overruling requirement of inadvertent discovery for "plain-view" seizures). The primary safeguard against unwarranted or overly intrusive government entry into private homes is the warrant procedure of the Fourth Amendment. *Payton,* 445 U.S. at 583, 100 S.Ct. at 1378.

 The Fourth Amendment provides that warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The Fourth Amendment's prohibition against unreasonable searches and seizures has always been interpreted to prevent a search that is not limited to the particularly described 'place to be searched, and the persons or things to be seized.'" *Florida v. Royer,* 460 U.S. 491, 499, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Neutral, detached judicial officers decide the scope of a warrant; the determination is not left to the discretion of the law enforcement officers who exe-

cute it. *Payton,* 445 U.S. at 586 n. 24, 100 S.Ct. at 1380 n. 24 (quoting *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 [1948] ). Indeed, searches or seizures which are not authorized by the judicial process are *"per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions," none of which Jefferson County defendants allege are applicable here. *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

■ In executing a warrant, law enforcement officers are limited to actions which are expressly authorized by the warrant or which are reasonably related to its purpose and are thus impliedly authorized by the warrant. *See Michigan v. Summers,* 452 U.S. 692, 705, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340 (1981) (search warrant implicitly authorizes law enforcement officers to detain occupants of premises during search); *cf. U.S. v. Robertson,* 21 F.3d 1030, at 1035 (10th Cir.1994) (federal agents not justified in seizing evidence not covered by search warrant). Where law enforcement officers' actions grossly exceed the scope of a particularized warrant, they undermine the particularity requirement of the Fourth Amendment.[1] *United States v. Medlin,* 842 F.2d 1194, 1199 (10th Cir.1988). As the United States Court of Appeals for the District of Columbia Circuit explained:

> When investigators fail to limit themselves to the particulars in the warrant, *both* the particularity requirement and the probable cause requirement are drained of all significance as restraining mechanisms, and the warrant limitation becomes a practical nullity. Obedience to the particularity requirement both in drafting and executing a search [or arrest] warrant is therefore essential to

protect against the centuries-old fear of general searches and seizures.

*United States v. Heldt,* 668 F.2d 1238, 1257 (D.C.Cir.1981) (emphasis supplied).

■ Plaintiff asserts that, in bringing the media into his home for the purpose of filming his arrest, Jefferson County defendants exceeded the scope of the arrest warrant. (Compl.¶ 45.) The warrant authorized the deputies to take plaintiff into custody, and it empowered them to enter plaintiff's home for that limited purpose. *See Steagald v. United States,* 451 U.S. 204, 214, 101 S.Ct. 1642, 1648, 68 L.Ed.2d 38 (1981); *Payton,* 445 U.S. at 602–03, 100 S.Ct. at 1388. Jefferson County defendants have made no showing, however, that the warrant gave them license to bring reporters and television cameras into plaintiff's home. Indeed, such license would run counter to the principles of the particularity requirement described above.

■ Affording law enforcement officers discretion to bring members of the press into citizens' homes whenever they desired would also violate the reasonableness requirement of the Fourth Amendment. The Fourth Amendment requires that searches and seizures be carried out reasonably. *See, e.g., Florida v. Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991); *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner,* 471 U.S. 1, 7–8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). In determining the constitutionality of an arrest, the court must evaluate the nature and circumstances of the arrest and the governmental interests allegedly justifying the intrusion. *Garner,* 471 U.S. at 8, 105 S.Ct. at 1699 (citations omitted). "Because one of the factors [in the balance] is the extent of the intrusion [of the arrest], it is plain that reasonable-

---

1. Although the majority of the cases interpreting the particularity requirement involve search warrants, the Fourth Amendment's protection applies to arrests as well as seizures of property. *Payton,* 445 U.S. at 585, 100 S.Ct. at 1379. Hence, in determining the

reasonableness of law enforcement defendants' actions in connection with executing the warrant for plaintiff's arrest, it is appropriate to consider rules established in fourth amendment cases involving searches and seizures of tangible items. *See id.*

ness depends on not only when a seizure is made, but also how it is carried out." *Id.* (citations omitted). Given the sanctity of the home in fourth amendment jurisprudence, police facilitation of media coverage of an individual's arrest in his house is a highly intrusive government entry into a private home. *See Ayeni v. Mottola,* 35 F.3d 680, 686 (2d.Cir.1994). In fact, the filming and photographing of the arrest and the subsequent broadcast of the film and publication of the pictures strikes this court as the epitome of intrusiveness in modern society. Absent justification or implied authorization for the intrusion consistent with the Fourth Amendment, such behavior clearly exceeds the scope of the arrest warrant. *See id.; see also Buonocore v. Harris,* 65 F.3d 347, 356 (4th Cir. 1995) ("[W]e have no doubt that the Fourth Amendment prohibits government agents from allowing a search warrant to be used to facilitate a private individual's independent search of another's home for items unrelated to those specified in the warrant. Such a search is not 'reasonable.' It obviously exceeds the scope of the required specific warrant and furthermore violates the 'sanctity of private dwellings.'") (citing *Martinez-Fuerte,* 428 U.S. at 561, 96 S.Ct. at 3084). *But cf. Parker v. Boyer,* 93 F.3d 445, 447 (8th Cir.1996), *cert. denied,* 519 U.S. 1148, 117 S.Ct. 1081, 137 L.Ed.2d 216 (1997) (finding it not "self-evident that the police offend general fourth-amendment principles when they allow members of the news media to enter someone's house during the execution of a search warrant").

Jefferson County defendants make no attempt to justify or demonstrate authorization for their facilitation of the media's entry into plaintiff's home. Consequently, I find that their alleged conduct—bringing the media into plaintiff's home to film and record his arrest—exceeded the scope of the arrest warrant, amounted to an unreasonable execution of the warrant, and thus violated plaintiff's fourth amendment rights. Accordingly, I turn to whether plaintiff's right to be free from such conduct was "clearly established" at the time of Jefferson County defendants' alleged actions—March 30, 1993. *See Trigalet,* 54 F.3d at 647.

### ii. Was the Constitutional Right Clearly Established?

This case is similar to *Ayeni,* in which the Second Circuit denied qualified immunity to a United States Secret Service agent who brought a television crew into a private home to film the agent's search thereof and interrogation of its residents. *See Ayeni,* 35 F.3d at 691. *Accord, Berger v. Hanlon,* 129 F.3d 505, 510–11 (9th Cir. 1997). *Parker* also involved media accompaniment during the execution of a search warrant. *Parker,* 93 F.3d at 446–47. Unlike the Second Circuit in *Ayeni,* however, the Eighth Circuit in *Parker* concluded that the police officers who brought the media to the plaintiff's home did not violate any clearly established constitutional principle and were entitled to qualified immunity against the plaintiff's section 1983 claim. *Id.* at 447. *See also Wilson v. Layne,* 141 F.3d 111 (4th Cir.) (en banc) (6–5 decision), *cert. granted in part,* —— U.S. ——, 119 S.Ct. 443, 142 L.Ed.2d 398 (1998). I find more persuasive the opinions in *Ayeni* and *Berger* and Judge Murnaghan's eloquent dissent in *Wilson.*

Like this court, the *Ayeni* court reviewed the abundance of case law regulating the execution of search warrants and discussing the Fourth Amendment's vigilant protection of the home. *Ayeni,* 35 F.3d at 686. It concluded that "the right of the Ayenis to be protected under the Fourth Amendment from an agent's bringing into their home persons not expressly nor impliedly authorized to be there, such as a television camera crew, was 'clearly established' at the time of the search, and [ ] [the agent] could not with objective reasonableness have believed that his action was consistent with the Fourth Amendment." *Id.*

Relying on language from the Tenth Circuit's opinion in *Medina,* 960 F.2d at 1498, ("[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains"), the Jefferson County defendants vigorously argue that the absence of any such decision on point entitles them to summary judgment. I believe they read this *Medina* language far too rigidly. I do not think *Medina* requires district courts in this circuit to search for cases "on point" and to grant defendants' motions for summary judgment if they cannot locate such cases decided in plaintiffs' favor. The key word in the referenced quotation is "ordinarily." The rigid interpretation of *Medina* urged by defendants would be inconsistent with applicable precedent from the United States Supreme Court. *See Creighton,* 483 U.S. at 640, 107 S.Ct. 3034 (rejecting notion "that an official action is protected by qualified immunity unless *the very action in question* has previously been held unlawful" and stating, rather, that "in light of pre-existing law the unlawfulness must be apparent" [emphasis supplied]). As Judge Murnaghan observed, "[w]e must not, when arguing whether some specific incarnation of Fourth Amendment rights was or was not clearly established, lose sight of the core values that the Fourth Amendment was designed to protect." *Wilson,* 141 F.3d at 121 (dissenting opinion).

 Applying the standard articulated in *Creighton,* I conclude that, even though as of March 30, 1993 (the date law enforcement defendants went to plaintiff's home to execute the arrest warrant) no reported decision expressly forbade law enforcement officials from bringing the press into a private home, reasonable officers would have realized that doing so grossly exceeded the authorization provided by the arrest warrant. As the Second Circuit observed in *Ayeni:*

It has long been established that the objectives of the Fourth Amendment are to preserve the right of privacy to the maximum extent consistent with reasonable exercise of law enforcement duties and that, in the normal situations where warrants are required, law enforcement officers' invasion of the privacy of a home must be grounded on either the express terms of a warrant or the implied authority to take reasonable law enforcement actions related to the execution of the warrant.... [A]n objectively reasonable officer could not have concluded that inviting a television crew—or any third party not providing assistance to law enforcement—to participate in a search was in accordance with Fourth Amendment requirements.... A private home is not a soundstage for law enforcement theatricals.

*See Ayeni,* 35 F.3d at 686.

Indeed, at the time of the actions at issue, there was law which should have alerted the officers that their actions were unconstitutional. The Sixth Circuit, for example, had held that, "[o]fficers in 'unquestioned command' of a dwelling may violate that trust and exceed the scope of the authority implicitly granted them by their warrant when they permit unauthorized invasions of privacy by third parties who have no connection to the search warrant or the officers' purposes for being on the premises." *Bills v. Aseltine,* 958 F.2d 697, 704 (6th Cir.1992). *See also Buonocore,* 65 F.3d at 357 (clearly established that officers exceed scope of warrant at least in part because they let private party accompany them to execute warrant). Additionally, the United States District Court for the Eastern District of New York had rebuked law enforcement agents' who permitted a television network to film the execution of a search warrant in a private home. *See United States v. Sanusi,* 813 F.Supp. 149, 160–61 (E.D.N.Y.1992). The court wrote:

Charged as they are with the delicate and sensitive responsibility of executing a judicially sanctioned violation of a person's privacy, government agents have a duty to see that as little harm is done as is necessary to the task. Wantonly exceeding the scope of the warrant would represent a failure to perform that duty. Inviting private citizens whose presence is not necessary to the execution of the warrant to join the search party is a failure of public trust—one that indicates disregard of the important values at stake when the government enters a person's home.

*Id.* at 160–61.

As discussed above, at the time of the actions at issue, the right to be free from unauthorized government intrusion into one's home, and the importance of confining warrant executions to the scope of the warrant were clearly established in fourth amendment jurisprudence. Reasonable officers in the position of Jefferson County defendants would have known that bringing the press into plaintiff's home violated the Fourth Amendment. I therefore conclude that, at the time Jefferson County defendants brought the media to plaintiff's home, it was "clearly established" that the law enforcement officers' alleged actions exceeded the warrant's scope; undermined the particularity requirement; and, in so doing, violated plaintiff's rights under the Fourth Amendment. Accordingly, Jefferson County defendants sued in their individual capacities are not entitled to qualified immunity from plaintiff's fourth amendment claim.

### f. Section 1983 Claim Against the Board

 As a local governing body, the Board may be liable for damages under section 1983 if the execution of its policy or custom caused plaintiff to suffer a constitutional deprivation. *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). The determination of whether a local government is liable under section 1983 entails a dual inquiry: (1) whether a constitutional violation occurred; and (2) whether the government was responsible. *Collins v. City of Harker Heights,* 503 U.S. 115, 122, 112 S.Ct. 1061, 1067, 117 L.Ed.2d 261 (1992). The Supreme Court has explained:

> The "official policy" requirement [is] intended to distinguish acts of the [local government] from acts of the employees of the [local government], and thereby make clear that [local government] liability is limited to action for which the [local government] is actually responsible. *Monell* reasoned that recovery from a [local government] is limited to acts that are, properly speaking, acts "of the [local government]"—that is, acts which the [local government] has officially sanctioned or ordered.

*Pembaur v. Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986).

 Jefferson County defendants assert that plaintiff has not alleged with sufficient specificity the existence of a policy or custom permitting the media to enter plaintiff's property without his consent. (Jefferson County Defs.' Mot. to Dismiss at 10.) There is no heightened pleading standard, however, for claims against local governments under section 1983. *Leatherman v. Tarrant County Narcotics Unit,* 507 U.S. 163, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). To state a section 1983 claim against a local governing body, a plaintiff need only plead the "short and plain statement of the claim showing that [he] is entitled to relief" required by rule 8(a)(2) of the Federal Rules of Civil Procedure. *Id.; see also Hall v. Lopez,* 823 F.Supp. 857, 866 (D.Colo.1993) (suggesting that plaintiff's "bare allegation" that city policy or custom was the moving force behind officers' violation of her constitutional rights was sufficient to prevent dismissal of her claim against the City of Colorado Springs, Colorado).

■ In his complaint, plaintiff alleges that "the Board knew of, supported, adopted, approved and ratified the policy or custom of their law enforcement officials['] inviting the news media onto the personal property of individuals without their consent to record unlawful search and seizures, and this policy or custom in effect became the policy or custom of the Board itself." (Compl.¶ 9.) I find that this allegation constitutes the "short and plain statement" required by rule 8(a)(2). Accordingly, I deny Jefferson County defendants' motion to dismiss for failure to allege a Board policy or custom sufficient to impose liability on the county.

### 2. Denver's Motion for Summary Judgment

Denver defendants move for summary judgment on the grounds that: (1) officers sued in their individual capacities are entitled to qualified immunity under 42 U.S.C.A. § 1983 with respect to plaintiff's constitutional claims against them; (2) plaintiff has not shown that press involvement in the execution of the arrest warrant violates the Fourth Amendment or that Denver police had an official policy or widespread custom concerning press involvement in the execution of arrest warrants; (3) plaintiff cannot claim violation of substantive due process in the context of this case; (4) officers sued in their individual capacities are entitled to qualified immunity under section 24–10–118(2) of the G.I.A. with respect to plaintiff's pendent state-law tort claims; and (5) Denver has absolute immunity from plaintiff's pendent state-law tort claims under section 24–10–108 of the G.I.A. (City [and County of Denver] Def.'s Mot. for Summ.J. and for Stay of Disc. at 2–3 [filed Sept. 21, 1994].)

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553; *see* Fed.R.Civ.P. 56(e). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir.1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir.1990] ).

#### a. Substantive Due Process Claims

Plaintiff concedes that *Albright* bars his fourteenth amendment substantive due process claim. (Pl.'s Denver Resp. at 11.) As previously explained in my analysis of Jefferson County defendants' motion to dismiss, *Albright* bars his fifth amendment substantive due process claim as well. *See Albright*, 114 S.Ct. at 813. Accordingly, Denver defendants' motion for summary judgment is granted with respect to plaintiff's fifth and fourteenth amendment substantive due process claims.

### b. Qualified Immunity Under 42 U.S.C.A. § 1983

### i. Legal Standard

The standard by which claims of qualified immunity are analyzed is set out in the section addressing Jefferson County defendants' motion to dismiss and need not be repeated here. If plaintiff fails to show that (1) Denver defendants' alleged conduct violated a statutory or constitutional right, and (2) the right was clearly established, then Denver defendants prevail. *See Derda,* 53 F.3d at 1164. Because Denver defendants have moved for summary judgment, however, if plaintiff succeeds in making the twofold showing, the burden shifts to Denver defendants to show that no genuine issue of material fact is in dispute and that they are entitled to judgment as a matter of law. *See id.*

### ii. Lawfulness of Police Officers' Actions

The law protecting the sanctity of the private home and requiring warrants to be drafted with particularity and executed reasonably is reviewed above and, thus, is not repeated here. Denver defendants' motion for summary judgment differs slightly, however, from that of Jefferson County defendants. The impact of those differences on Denver defendants' entitlement to qualified immunity is the focus of this section.

As in the case of Jefferson County defendants, plaintiff alleges that Denver defendants exceeded the scope of the arrest warrant by bringing the media into his home for the purpose of recording his arrest. (Compl.¶ 45.) Denver defendants do not allege that any exceptions to the warrant requirement apply here. Unlike Jefferson County defendants, however, Denver defendants assert that they brought the media to plaintiff's house to serve a legitimate law enforcement function—to publicize plaintiff's face in the hope that unidentified victims would come

forward upon seeing it. (Denver Defs.' Br., Ex. B [Frazzini's Aff. ¶ 2].)

 To be sure, it is well-established that federal law enforcement officials generally may enlist the help of private citizens in executing a warrant. *See, e.g.,* 18 U.S.C.A. § 3105 (1985); *United States v. Clouston,* 623 F.2d 485 (6th Cir. 1980); *United States v. Schwimmer,* 692 F.Supp. 119 (E.D.N.Y.1988). The same should hold true for state law enforcement officials. I need not reach that issue here, however. Even assuming that state officials have similar license to enlist private help in executing arrest warrants, Denver defendants present no evidence that they acted on a belief that the media's presence or seizure of images and sounds from plaintiff's home would help them *accomplish plaintiff's arrest.* Indeed, their proffered "legitimate law enforcement purpose" is totally unrelated to the execution of the warrant for plaintiff's arrest. As noted above, the arrest warrant neither explicitly nor implicitly authorized media accompaniment. Thus, like Jefferson County defendants, Denver defendants have demonstrated neither justification nor authorization for bringing the media into plaintiff's home.

 Also as discussed above, the entry of television cameras into one's home and subsequent filming of the most humiliating event of one's life typifies the invasion of an individual's privacy in today's society. Thus, contrary to Denver defendants' assertion, their actions were not a *de minimis* intrusion. Denver defendants plainly exceeded the warrant's scope. *See Aseltine,* 958 F.2d at 704; *see also Buonocore,* 65 F.3d at 356. *But cf. Parker,* 93 F.3d at 447. Accordingly, I conclude that Denver defendants' alleged action—bringing the media into plaintiff's home for the purpose of filming and recording his arrest—violated plaintiff's fourth amendment rights.

### iii. Clearly Established Right

As in the case of Jefferson County defendants, the weight of fourth amendment jurisprudence protecting the sanctity of the private home and emphasizing the importance of particularized warrants would have made it abundantly clear to reasonable officers in Denver defendants' position that bringing the press into plaintiff's home violated the Fourth Amendment. The arrest warrant did not specifically authorize Denver defendants' action, nor did it provide implicit authorization because the press was not needed to execute the warrant and bring plaintiff into custody. Thus, even though no reported decision expressly forbade law enforcement officials from taking the press into a private home, reasonable officers in Denver defendants' position would have known that doing so exceeded the warrant's scope. I therefore conclude that plaintiff's right to be free from Denver defendants' actions in this case was "clearly established" at the time they occurred. Accordingly, Denver defendants sued in their individual capacities are not entitled to qualified immunity under 42 U.S.C.A. § 1983.

 Denver defendants do not assert that no genuine issue of material fact is in dispute. Indeed, it appears that Denver defendants and plaintiff disagree as to whether plaintiff consented to the media's recording of his arrest. (*See* Compl. ¶ 2; *denied at* City [and County of Denver] Defendants' Answer at ¶ 3 [filed June 21, 1994].) Accordingly, Denver defendants' motion for summary judgment as to plaintiff's section 1983 claim is denied. *See Derda*, 53 F.3d at 1164.

### c. Fourth Amendment Claim—Validity

As explained above, plaintiff had a fourth amendment right to be free from Denver defendants' bringing members of the press into his home. Thus, I reject Denver defendants' argument that their involving the press in plaintiff's arrest did not violate the Fourth Amendment.

### d. Liability of Denver

 The standard for local government liability under section 1983 is set out in the discussion of Jefferson County defendants' motion to dismiss and need not be repeated here. Denver defendants maintain that: (1) even if the members of the media are liable for trespass, they, as state actors, cannot be held liable for facilitating the commission of a state tort by a private party; and (2) even assuming Denver defendants violated the Fourth Amendment, plaintiff has alleged no facts supporting his claim that Denver had an official policy covering the actions at issue. (Denver Defs.' Br. at 7.) I have already determined, as explained above, that Denver defendants can be sued individually under section 1983 for bringing the press into plaintiff's home without his consent. Thus, the question is whether there is a genuine issue of material fact as to the existence of a Denver policy, implemented through the Denver police department, to bring the media into citizens' homes without the residents' consent.

Section 110.04(4)(f) of the Denver Police Department Operations Manual states:

> Authorized agents of the media shall be permitted access on private property . . . upon consent of the owner or agent of the property, or *without such consent,* where agents are willing to assume responsibility for such acts, so long as access does not hinder police operations.

(Denver Defs.' Br., Ex. D [Denver Police Department Operations Manual § 110.04(4)(f) ] [emphasis supplied].) Denver defendants assert that section 110.04(4)(f) does not cover instances in which the media's presence serves a legitimate law enforcement purpose. (*Id.,* Ex. C [Michaud's Aff. ¶¶ 2–3].) Plaintiff disagrees. (Pl.'s Denver Resp. at 10–11.)

I find that reasonable juror could infer that the language of section 110.04(4)(f) covers all instances in which the media enters private property without the owner's consent, including the instance at issue

here. Contrary to defendant's suggestion, there is nothing in the language of section 110.04(4)(f) or any part of section 110.04 which indicates that the manual does not apply where the press allegedly serves a legitimate law enforcement purpose. (*See* Denver Defs.' Br., Ex. D [Denver Police Department Operations Manual] § 110.04.) Thus, I find that a genuine issue of material fact exists as to whether the Denver Police Department's policy resulted in a violation of plaintiff's fourth amendment rights. Accordingly, Denver defendants' motion for summary judgment as to Denver's liability under section 1983 is denied. *See Cannon v. City and County of Denver,* 998 F.2d 867, 878 (10th Cir.1993) (summary judgment was improperly granted where, "when all of the plaintiffs' evidence is considered, it is sufficient, if believed, to support a finding that the City and the Police Department followed a policy or custom resulting in violation of plaintiffs' constitutional rights"); *Schalk v. Gallemore,* 906 F.2d 491, 498 (10th Cir.1990) (remanding case in which district court granted summary judgment where "factual issues exist[ed] relative to whether [administrator's] actions constituted hospital board policy"); *Watson v. City of Kansas City,* 857 F.2d 690, 696 (10th Cir.1988) (district court erred in granting summary judgment where plaintiff's evidence, if believed, was sufficient to support inference that city and police department had a policy or custom of affording less protection to domestic violence victims than to victims of non-domestic attacks).

### e. State–Law Immunity

### i. Public Entity–Immunity

■ The standard for public-entity immunity is discussed in the analysis of Jefferson County defendants' motion to dismiss and, thus, is not repeated here. Plaintiff does not allege claims of trespass or invasion of privacy against Denver, and he concedes that, as a governmental entity, Denver cannot be held liable for state-law tort claims. (Pl.'s Denver Resp. at 11.)

As with the Board, section 24–10–114(4) of the G.I.A. bars plaintiff's outrageous conduct claim against Denver. *See* Colo.Rev. Stat. § 24–10–114(4). Accordingly, Denver defendants' motion for summary judgment is granted with respect to plaintiff's outrageous-conduct claim against Denver.

### ii. Public Employee Immunity

Denver defendants' claim of state-law immunity for officers sued in their individual capacities is similar to that of Jefferson County defendants. Likewise, analysis of the applicability of section 24–10–118(2) of the G.I.A. is similar. Thus, as in the case of Jefferson County defendants, plaintiff's complaint contains a sufficiently specific factual basis for his claim that Denver defendants acted willfully and wantonly. (*See* Compl.) I therefore conclude that plaintiff satisfies the heightened pleading standard of section 24–10–110(5)(a) with respect to Denver defendants.

Because Denver defendants have moved for summary judgment, I must determine whether there is a genuine issue of material fact as to whether they acted willfully and wantonly. *See* Fed.R.Civ.P. 56(c); *Erickson v. Board County Comm'rs,* 801 F.Supp. 414, 423 (whether defendants acted willfully and wantonly is a question of fact) (citing *Patel v. Thomas,* 793 P.2d 632, 637 [Colo.Ct.App.1990]; *Horton v. Reaves,* 186 Colo. 149, 526 P.2d 304, 308 [1974] ). By claiming that they invited the press into plaintiff's home in furtherance of a legitimate law enforcement purpose, Denver defendants implicitly admit that they intentionally—and therefore willfully—brought the media into plaintiff's house. (*See* Denver Defs. Br., [Frazzini's Aff. ¶ 3].) Thus, the only question is whether there is a genuine dispute as to whether Denver defendants' actions were wanton under section 24–10–118(2).

■ As explained above, wantonness encompasses actions taken wholly in disregard of others' rights. *Pettingell,* 271 P.2d at 1042. Also as previously discussed,

plaintiff's claim that Denver defendants knew or should have known that they acted beyond the scope of the arrest warrant is well-grounded in fourth amendment jurisprudence. *See, e.g., Payton,* 445 U.S. at 589, 100 S.Ct. at 1381–82. Thus, a reasonable juror could conclude that Denver defendants acted wholly in disregard of plaintiff's fourth amendment rights. Hence, there is a genuine dispute of material fact as to whether Denver defendants acted wantonly in bringing the press into plaintiff's home. Accordingly, I deny Denver defendants' motion for summary judgment on plaintiff's state-law tort claims against Denver defendants sued in their individual capacities.

### *3. Conclusion*

Based on the foregoing, it is

ORDERED as follows:

1. Jefferson County defendants' motion to dismiss (# 30) is GRANTED in part and DENIED in part.

 a. The motion is GRANTED to the extent it is directed against plaintiff's outrageous-conduct claim against the Board of County Commissioners of Jefferson County. That claim is hereby DISMISSED with prejudice.

 b. The motion is GRANTED to the extent it is directed against plaintiff's section 1983 claim for violation of his fifth and fourteenth amendment rights to substantive due process. That claim is hereby DISMISSED with prejudice.

 c. Jefferson County defendants' motion is DENIED as to plaintiff's remaining claims.

2. Denver defendants' motion for summary judgment (# 44) is GRANTED in part and DENIED in part.

 a. The motion is GRANTED to the extent it is directed against plaintiff's section 1983 claim for violation of his fifth and fourteenth amendment rights to substantive due process. That claim is hereby DISMISSED with prejudice.

 b. The motion is GRANTED to the extent it is directed against plaintiff's outrageous-conduct claim against the City and County of Denver. That claim is hereby DISMISSED with prejudice.

 c. Denver defendants' motion is DENIED as to plaintiff's remaining claims.

3. Plaintiff's motion to preclude certain discovery (# 46) is GRANTED.

4. Plaintiff's remaining procedural motions (è72, 74) are GRANTED.